THE EURIPIDES.

AMERICAN SUGAR–REFINING CO. v. THE EURIPIDES.

(Circuit Court of Appeals, Second Circuit. January 8, 1896.)

No. 20.

1. SHIPPING—DAMAGE INDIRECTLY CAUSED BY RATS.
    Part of a cargo of sugar, on board the steamer E., was found, on her arrival in port, to be damaged by salt water, escaping through a hole in a water-closet pipe. The pipe, which was of lead, extended from the forecastle water-closet to a point in the vessel's side three or four feet above the water line, the opening being protected by a valve. The pipe was flushed with sea water from the pumps, at least once every day, and the water which did the damage appeared to have escaped during such flushings through a hole gnawed by rats. *Held*, that the damage so caused was not due to a sea peril, and that the vessel was liable therefor.

2. DAMAGE—EVIDENCE.
    Damages were claimed for depreciation in weight of the damaged bags of sugar. There was evidence of the weight of the damaged bags, and

that some bags were entirely empty, but no direct evidence of the weight of the sound bags. *Held* that, on such evidence, no allowance could be made for depreciation of the damaged bags, but allowance might be made for the empty bags at the weight of the damaged ones as a minimum.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a final decree of the district court, Southern district of New York, entered December 22, 1894, in favor of libelant, against the Euripides and the claimant for $4,388.85, and against the sureties on her stipulation for value and costs in the sum of $3,750, for loss and damage to a cargo of sugar transported in the Euripides from Cienfuegos to New York, in February and March, 1892. The opinion of the district court upon the hearing is reported in 52 Fed. 161, and upon the confirmation of the commissioner's report in 63 Fed. 140.

J. Parker Kirlin, for appellant.

Chas. C. Burlingham, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The sugar, 13,999 bags, was stowed, part in the between decks, and part in the lower hold; and, upon breaking out cargo in New York, it appeared that 2,539 bags were damaged, and 88 were entirely empty. It was manifest that salt water had caused the loss. The ship showed that she had encountered heavy weather, and claimed exemption from responsibility for the loss on the ground that it was caused by a peril of the sea. The district judge found, and we concur with him in such finding, that some of the water which came over her bows during the tempestuous weather she encountered worked down through the deck about the mast and ventilators, into the compartment below. That was a sea peril. For the damage thus caused to some 300 bags libelant was not allowed to recover, and, as it has not appealed, the damage to these bags is out of the case. The ship also claimed that part of the damage was caused by water coming through the hatches, by reason of the battens being loosened by constant seas sweeping over the decks; but the proof does not sustain this contention. Undoubtedly, the main cause of damage was water which came through a hole in a water-closet pipe. This pipe ran from the forecastle water-closet, on the main deck, with a slight curve, down to an aperture of discharge in the ship's side, about a foot or more above the between decks, and some three or four feet above the water line. This aperture, which in heavy weather would be frequently under water, was protected against the influx of the sea from without by an automatic hinged valve. The last witness called upon the trial in the district court testified that this valve was battered into a ball, and inefficient to discharge its functions; but his testimony, taken as a whole, does not inspire confidence, and we are not satisfied that upon arrival the valve was in any such condition of disrepair as would require renewal or overhauling. Of course, if the valve were in good order, the amount of water which

would be spurted into the aperture under impact of the seas would be too trifling to merit consideration.

The water-closet pipe was of lead, about four or five inches in diameter. In regular course, except when the weather made it impracticable to do so, the water-closet was flushed, at least, once a day, with the hose used for washing the decks, the hose being kept there for two or three minutes at a time, and the water thus pumped in finding its escape through the pipe and valve. Upon arrival, an oblong hole, about 2 inches by 1½, was found in the lower part of this pipe, not far from the ship's side. Of course, while this hole was there, the water which was used to flush the water-closet pipe would to a considerable extent find its way into the 'tween decks, instead of escaping through the valve, and it would seem that a large part of the damage to the cargo was thus caused. The stevedore who broke out the cargo found partially empty bags, the contents escaping under action of the water, on the starboard side of the 'tween decks from the water-closet pipe, back to the wooden bulkhead between Nos. 1 and 2 'tween decks, and thence down to the bottom of the ship, thus tracing the course of the water from the hole in the pipe into the hold. The evidence is quite convincing that this hole was gnawed by rats, but damage to cargo directly caused by rats is not a sea peril; it is usually provided for by the "vermin" clause in bills of lading. And we see no good reason to lay down a different rule where the action of the rats has so disarranged the interior appliances of the ship that water intentionally taken aboard does not find the outlet provided for it, but is diverted into the cargo. When a case arises where a hole, through which the sea forces its way into the ship from without, is made by vermin from within, it will be time enough to discuss the case of Hamilton v. Pandorf, 12 App. Cas. 518, 528, cited in appellant's brief, where the damage was caused by the irruption of sea water from time to time through the injured pipe, caused by the rolling of the ship as she proceeded on her voyage. Inasmuch as the cargo was delivered in a damaged condition, and (disregarding the 300 bales under the ventilators, which have been already disposed of) it appears that a large part of the damage was caused otherwise than by sea peril, and the ship fails to separate from the whole damage any portion which it can show affirmatively to have been damaged by sea peril, it was rightly held responsible for the whole damage, except the 300 bags.

The damage was of two kinds: (a) Depreciation in value, and (b) loss of weight. There seems to be no contention here as to any error in the sum awarded for depreciation, but appellant insists that there was not sufficient proof produced to sustain the finding of $2,285.38 for loss of weight. In order to show how much sugar was lost, it was, of course, essential for the libelant to show how much was put on board. The bills of lading admitted the receipt of "13,999 bags of centrifugal sugar, marked and numbered as per margin," with the clause "Weight and contents unknown." We agree with the district judge that, where proof of the actual weight

at place of shipment is not procurable, a cargo owner may, with a cargo of this character, show the number and weights of such packages as arrived intact, and, from the averages thus obtained, be entitled to the inference that the other bags of like marks were of like weights. In the absence of any evidence showing that such a cargo gains in weight, from moisture or other cause, during a sea voyage, such proof would not tend to charge the shipowner with more than he received.

The appellant insists that there is sufficient evidence to show that there were material differences in the average weight of the sound bags of different marks, and that it was error to apply a uniform average of weight to the whole shipment. If such differences do appear, each different mark should be averaged by itself; but from the record before this court it is not clear that such differences existed. In the opinion of the district judge it is stated that "the sound bags, numbering over 11,000, weighed on the average about 330 pounds each." If evidence sustaining this statement were before the district court, it is not preserved in the record presented here. Upon the first hearing, before the commissioner, a statement of loss made up by appraisers, who had no personal knowledge of the weights, was offered in evidence. It contains the statement: "Delivered, 11,372 bags sound, weighing net 3,754,594, avg. 330.1612 pounds." This statement of loss was objected to by claimant, on the express ground, among others, that it was based on weights which have not been proved. It was admitted by the commissioner. Libelants then called their dock superintendent, who testified that the weighing was done by four men,—Collins, McMurran, Drewes, and Goener,—and produced their original weigh books. These were offered in evidence, and objected to, and subsequently marked for identification as "Libelant's Exhibits 2, 3, and 4 for Identification." Collins was next called, and proved his weights in No. 2, which was then marked in evidence without objection. He further testified from the book that he weighed 7,933 bags, which weighed 2,636,864 pounds, but does not state whether they were sound or damaged. He weighed them just as they came out of the ship, and among those which came to him were 88 empty bags, besides the 7,933. McMurran next proved two pages in "Exhibit No. 4 for Identification," which he said contained the entries of the weights made by him, and these pages were marked "McMurran." He testified that he weighed 256 bags of the damaged sugar, but does not state how much they weighed. Drewes was next called. He testified that he weighed damaged sugar only, and made entries in "No. 3 for Identification." These entries, a portion only of those contained in the book, were marked "Drewes." This witness further testified that he weighed 329 bags, which weighed 89,426 pounds. Goener was not called, nor is there any evidence in the record showing how many bags he weighed, nor how much they weighed. The other three witnesses accounted for 8,518 bags only. The record does not show that Exhibits 3 and 4 for identification were ever put in evidence, except, possibly, as to the pages above referred to as marked "Mc-

Murran" and "Drewes"; and neither those pages nor the book Exhibit No. 2 is presented here. Subsequently counsel for libelant offered a paper signed by William Rueger, showing some results of polariscope tests, but which seems not to have been put in evidence; and thereupon—

"It is admitted by counsel for claimant that the summary of the weigher's books, which have been offered in evidence, shows as follows:

Damaged:

| | | | |
|---|---|---|---|
| 256 bags, | 78,928 | lbs. | John McMurran, Weigher. |
| 329 " | 89,426 | " | Charles H. Drewes, " |
| 1,954 " | 643,982 | " | Goener, |

Damaged:
2,539 bags & 812,336 gross
Slack:
88 empty, 13,787 tare

2,627          798,549 net

"And counsel for libelant withdraws his claim for loss in weight of sugar."

It is insisted by the appellant that this admission as to the summary given above was conditional only upon libelant's withdrawal of its claim for loss in weight; and when, upon the coming in of the master's report, libelant renewed its claim for loss in weight, claimant obtained leave to withdraw a concession made by him as to loss by depreciation; and the case was sent to another commissioner, to take additional proof as to all damages sustained by reason of the matters alleged in the libel. No further proof as to the weights of the bags delivered was put in, and to the commissioner's finding that the 11,372 sound bags were weighed in New York, and found to average 330.1612 pounds to the bag, the claimant duly excepted. It appears from the record that, except for the admission as to the summary above given, claimant persistently, and on every proper occasion, objected that there was not competent evidence of the weight of the sound bags. Even if the admission still stands in the case,—and, in the absence of a specific withdrawal of it before the case was closed before the commissioner, it should so stand,—the record is barren of proof as to the weight of the sound bags, for that summary is only of the weights of the damaged bags. Without such proof no proper average weight of a sound bag was proved, and, unless the sound weight is determined, it is not possible to find how much loss of sugar the weight of the damaged bags showed. It appears, however, that 88 bags were entirely empty. While there is no sufficient proof to show what those bags weighed when sound, we concur with the district judge in the conclusion that the average weight of the damaged bags, which is shown by the summary above, may properly be taken as the least measure of the contents of a sound bag, and approve his calculation that the loss of sugar from the empty bags was 26,664 pounds.

The decree of the district court is therefore reversed, with costs of this court. The case is remitted to the district court, with instructions to decree in favor of the libelant for the depreciation as already found, viz. $1,989.88, less $246.80, depreciation on the 300 bags dam-

aged by water working through the ventilators. To the $1,743.08 thus found should be added the value of the 26,664 pounds of sugar lost from the 88 empty bags, with interest on the entire sum from March 5, 1892, and the costs of the district court.

It is unnecessary to discuss the objection raised to the form of the decree, as the amount of the new decree will be less than the stipulation.