## THE SENECA.

(District Court, S. D. New York.   April 7, 1908.)

1. SHIPPING—SHORT DELIVERY OF CARGO—LIABILITY OF VESSEL.

Where it appeared that a certain number of cases of bristles were laden on board of a steamship in good order, they were thereafter until delivery, at the ship's risk with respect to contents, and she is liable for a deficiency, in the absence of a valid exception in the bill of lading.

2. SAME—EXEMPTION IN BILL OF LADING.

Robbery or theft of cargo by those on board cannot be made a ground of exemption from liability of a vessel under the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]).

3. SAME—EVIDENCE OF WEIGHT—BOAT NOTE.

A receipt called a "boat note" given when goods are received on board from lighters, reciting the number of packages, that they were in good order, and their weight may be received in evidence as to such matters as complementary to the bill of lading, and where the packages were apparently of uniform weight when received, and those delivered intact were of the stated weight, but others which had apparently been tampered with were of less weight, it may be assumed that their weight was the same when they were received.

In Admiralty.   Suit for short delivery of cargo.

Beard & Paret and James T. Kilbreth, for libellants.

Convers & Kirlin and John M. Woolsey, for claimant.

ADAMS, District Judge.   This action was brought by Henry W. Peabody & Company against the steamship Seneca to recover the value of a claimed short delivery of bristles shipped by Ilbert & Company at Shanghai on the 15th day of September, 1905.   The shipment was of 50 cases of bristles, deliverable to order in New York.   The bill of lading was assigned by the shippers to the libellants, who claimed the goods upon arrival of the vessel, but it is alleged that they did not come in the same good order and condition as when shipped, a number of the cases having been tampered with and the contents thereof having in part been extracted while the goods were on the steamship, to the loss of the libellants of $873.92.   The claimant admits the shipment and the issuance of a bill of lading, denies many of the other allegations and alleges that the bill of lading only recited that the goods were in apparent good order and condition, and further:

"Eighth: Further answering and as a further and separate defence herein, the claimant alleges that the goods in question were carried subject to a contract of carriage contained in the bill of lading referred to in the fourth article of the libel and alleges that the bill of lading did not recite that the goods were received in good order and condition, but only that they were received in apparent good order and condition. It further provided that they were to be carried and delivered subject to the exceptions and conditions mentioned in the bill of lading, among which were the following:

'Weight, measurement, quality, quantity, contents and value (except for the purposes of estimating freight) unknown.'

'The act of God * * * robbers or thieves, by land or sea, on board, in craft or on shore, whether in the service of the ship owners or not, * * * or loss and/or damage of any description arising from * * * and circumstances beyond the control of the ship owners * * * barratry by master or crew, misfeasance * * * loss or damage caused by * * * all and every dangers and accidents of the seas, rivers and canals and of navigation

of whatever nature or kind, and the consequences of all the above mentioned risks and accidents.'

'The steamer is not liable for insufficient packing or wear and tear of packages, for inaccuracies, obliterations, insufficiency or absence of marks, numbers or descriptions of goods shipped, breakage, loss or damage arising directly or indirectly, before,. during or after loading, or until delivery is completed * * * inherent quality or vice of the goods shipped.'

'Shipowners will not be accountable * * * beyond the amount of $100. U. S. gold currency, for any one package unless bills of lading are signed for such goods and the value declared therein and freight paid ad valorem.' "

The bill of lading sustains the claimant's allegation · of "apparent good order and condition" and the further allegations pleaded.

The solution of the controversy of fact depends upon the answer to the question was the shipment made in good order, or whether a deficiency in the contents of some six of the packages, which was found at the time of delivery, existed at the time of the shipment or was in consequence of an abstraction of the contents while on board the vessel.

On the 15th of September the bill of lading was issued for the 50 cases, in apparent good order but with a provision that the weight was unknown. On the next day, the 16th, according to the dates in the instruments, the bristles were brought alongside and delivered to the steamer. A receipt, called a boat note, was thereupon issued by the chief officer of the ship, containing an acknowledgment of the receipt of 50 cases. The goods were tallied on the vessel by a clerk in the employ of the ship. A warning had been given to the officers that they must be very careful about bristles. Special injunctions were given, as testified by the second officer, for the officers to watch the shipment of the bristles themselves. Having these instructions in view, the cases were received and the note was issued. This note recited that the goods were "in good order and condition" and contained an instruction as · follows:

"Any package not in good order must be left in boat. Nothing but a clean receipt will be accepted. Shanghai Tug and Lighter Co. Limited."

The boat note also contained a memorandum "pls 50.00" which it has been testified, meant 50 piculs, a weight of 133⅓ pounds each, and it is contended therefrom that there was a definite loss of weight from that which was loaded on the steamer, as the turn out of six cases showed only 550 pounds gross, instead of 800 pounds. It does not appear that the packages were weighed at the time, which. impairs the value of the entry on the note in this respect but still it is some evidence of the quantity of bristles shipped, and it is fortified by the fact that the intact packages conformed to this standard of weight, 130 to 133 pounds, and is persuasive of the defective packages having contained the same amount. I think it is proper to use this note as evidence, complementary to the bill of lading. In The Euripides, 71 Fed. 728, 18 C. C. A. 226, where there was a question of weights, it was said by the Circuit Court of Appeals (page 732 of 71 Fed., page 230 of 18 C. C. A.):

"While there is no sufficient proof to show what those bags weighed when sound, we concur with the district judge in the conclusion that the average weight of the damaged bags, which is shown by the summary above, may prop-

erly be taken as the least measure of the contents of a sound bag, and approve his calculation that the loss of sugar from the empty bags was 26,664 pounds."

The cases containing the bristles were wooden boxes about 2½ or 3 feet x 2½ feet x 2½ feet, entirely covered with paper, which was found subsequent to delivery to be bruised as well as the wood, which also had nails drawn out from burst wood; also iron bands around the ends of the packages were broken. When the packages were opened, one was found to contain 2 bags of beans but no bristles, another contained partly beans and partly matting, with 24 pounds net of bristles, another contained 25 pounds net of bristles; another contained 62 pounds net of bristles; another contained 67 pounds net of bristles; another contained 92 pounds net of bristles. Some of the other cases were found to be slightly broken but with no deficiency of contents. When the cases were delivered to the ship they were examined carefully by the second officer and he saw nothing to indicate any deficiency in the contents, but as soon as a discharge was commenced it was immediately noticed that some of the cases were light and the attention of the officers was at once called to the fact. The actual deficiencies were not known till after the cases were put in store and an examination made there, two to four weeks later, in which the actual weights were ascertained.

Considerable stress is laid by the claimant upon the fact just mentioned, but it has not been attempted to deny that the weights were apparently uniform and correct when delivered to the vessel and that the cases were light when they reached New York. The testimony shows that great care was taken in the warehouse to protect the goods and it does not in any way appear that the contents were interfered with there. Under these circumstances a criticism of a late detailed examination of the contents and the weights is not entitled to very much consideration.

The conclusion to be derived from the facts is not seriously affected by the claim that the boxes were so stored and surrounded by other goods that access to them was practically impossible. I find that the vessel is in fault for a short delivery of the contents of several cases and should respond therefor unless a valid exemption exists to the claim. The pertinent parts of the exceptions, correctly extracted from the bill of lading, are stated in the answer, quoted above.

The rule governing matters of the kind is stated in the recent case of The Patria, 132 Fed. 971, 68 C. C. A. 397, where it in effect appears that where the evidence shows that a ship received goods on board in good condition, and delivered them damaged, it has the burden of proving that the damage was due to a risk excepted in the bill of lading, although if it is manifestly so, as from breakage or decay, which are excepted generally, the ship need not show the cause of the breakage or decay, but it is incumbent upon the cargo-owner to adduce proof of negligence. There can be no question that if these goods were stolen by the servants of the ship, she is liable therefor. The Minnetonka (D. C.) 132 Fed. 52; affirmed 146 Fed. 509, 77 C. C. A. 217. It was incumbent on the ship to show that the robbery was consummated by some one not belonging to the ship, if that was the fact,

then the burden would have been upon the libellants to show negligence in the care of the goods. The Saratoga (D. C.) 20 Fed. 869, 871. There is no direct proof, however, of the robbery, and in its absence, and under the circumstances shown here, that the vessel was generally in the stream, without access to the cargo by outsiders, it must be assumed that the deficient bristles were abstracted by those belonging to her and relief from liability therefor can not be obtained, under the provisions of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]).

The exception pleaded of non-accountability beyond $100 per package has not been urged and therefore has not been considered.

There will be a decree for the libellants, with an order of reference.