## THE PATRIA.

(Circuit Court of Appeals, Second Circuit. September 9, 1904.)

No. 183.

1. SHIPPING—DAMAGE TO CARGO—BURDEN OF PROOF.

Where the evidence shows that a ship received goods on board in good condition, and delivered them damaged, it has the burden of proving that the damage was due to a risk excepted in the bill of lading, although, if it is manifestly so, as from breakage or decay, which are excepted generally, the ship need not show the cause of the breakage or decay, but the cargo owner can only recover by proof of negligence.

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 125 Fed. 425.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, holding the steamship liable for damages to libelant's goods—giant beans in bags—transported from Marseilles to New York in February, 1902. The opinion of the District Judge is reported in 125 Fed. 425. The following excerpt sets forth his conclusions from the evidence: "I have examined the evidence carefully, and I am unable to reach any satisfactory conclusion as to what caused the damage. There is almost no direct evidence on the question. There is no proof that the beans were not properly cured. There is no proof that any coal dust actually came in contact with them anywhere, although it may have blown over the cargo to some extent when the steamer was coaling [sic, apparently the word should be "loading"] at Marseilles. There is no proof that anything occurred on the voyage, or when the beans were being landed, or after they were landed at the wharf in Brooklyn, which would cause the bags to be stained, dampened, or soiled. They were properly stowed in the hold, and an examination showed that the dampness was not caused by salt water. The pier was covered, and apparently there was no opportunity for the bags to become wet when being landed or at any time. If the damage was due to heating caused by improper curing, that does not seem to me to sufficiently explain the stained and discolored external appearance of the bags. If the black specks were coal dust which had been blown over the cargo, I do not see how the coal dust could have become so widely diffused through the interior of the bags; if the damage was caused by dampness, I do not see how the bags could have become wet during the voyage; and, if they became wet while discharging, I do not see how the resulting dampness could have so quickly caused so much injury to the beans. The claims of both parties are based solely on inferences which they argue should be drawn from the appearance of the beans after they were discharged from the steamer. All that seems to me clear on the proof is that the goods were shipped in good condition, and were damaged when they reached New York."

E. G. Benedict, for appellant.
Robert F. Little, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). The sharpest conflict of evidence in the case—as to facts, not as to theories—is touching the appearance of the bags when delivered from the steamer. The District Judge found that a large number of them were stained, damp, and dirty. He saw most, if not all, of the witnesses; and, upon an

¶ 1. See Shipping, vol. 44, Cent. Dig. § 481.

examination of the record, we are not prepared to find otherwise as to the condition of the bags, and are in substantial accord with the statements contained in the excerpt quoted above.

The appellant, however, contends that, even upon his own statement of the case, the conclusion of law reached by the District Judge is erroneous. The opinion concludes as follows:

"Under these circumstances, I think that the rule applies that when a common carrier receives goods in good condition, and delivers them damaged, it has the burden of proof to show that the damage was caused by a risk excepted in the bill of lading; and, in the absence of satisfactory proof that the damage was so caused, the court is justified in finding for the libelant, even if the cause of the damage does not appear."

It is, no doubt, the rule, as appellant contends, that, when the damage is manifestly of the sort excepted, the ship is under no obligation to show the promoting cause. To illustrate, if the exception is "damage caused by peril of the sea," and the cargo is landed drenched with salt water, it will be for the ship to show that the salt water found access to the cargo through a peril of the sea; but if the exception is "damage by breakage," and the article arrives broken, the ship is not required to show how it got broken—although the libelant may show that negligence of those on the ship, or of those who stowed her or discharged her, caused the break, and, showing that, may recover. If the sole damage to the cargo in the case at bar were manifestly decay, and the language of the exception were, as the respondent states it in his brief, "for decay caused by inherent defect," the ship would have the burden of showing that the decay was caused by inherent defect. If, however, the sole damage was manifestly decay, and the language of the exception were, as given in the bill of lading, "not responsible for damage occasioned by decay of any kind," the appellant would be right in his contention, and, the cause of the decay not being shown to be negligence on the part of the ship, the libel should be dismissed. The difficulty is that there appear to have been two different sorts of damage. In 595 of the bags some of the beans themselves were shriveled, soft, and spoiled—might fairly be said to be decaying—but these bags also contained the black substance which the witnesses for libelant, including the chemist, unite in describing as coal dust. And in 138 more of the bags (the total shipment was 1,000 bags, of which 267 were delivered in perfectly good condition) the principal damage was from the same cause. Upon the proofs as they stood, therefore, we think the District Judge reached a correct conclusion, and affirm the decree, with interest and costs.