THE ST. QUENTIN.

(Circuit Court of Appeals, Second Circuit. June 29, 1908.)

No. 220

1. SHIPPING—LIABILITY FOR INJURY TO CARGO—EXCEPTED CAUSES.
    Where injury to cargo resulted from a cause excepted in the bill of lading, the carrier cannot be held responsible, unless his negligence is affirmatively shown.

2. SAME—PROOF OF NEGLIGENCE.
    Where a shipment of shellac from Calcutta to New York, made under a bill of lading excepting liability for loss or damage from heat, was injured by being subjected to an unusually high degree of heat, which caused it to fuse together, such fact alone is not sufficient to establish the negligence of the vessel; it being shown that it might occur without negligence, especially during the passage through the Red Sea, and that the shellac was stowed in a particularly well-ventilated part of the vessel.

Appeal from the District Court of the United States for the Southern District of New York.

J. Parker Kirlin and John M. Woolsey, for appellants.

Robinson, Biddle & Benedict (Roderick Terry, Jr., and W. S. Montgomery, of counsel), for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The bill of lading contains an exception of "loss or damage * * * from * * * heat or fire on board, in hulk or craft, or on shore." The District Court found that the injury to the shellac was undoubtedly caused by heat, and the evidence abundantly sustains that conclusion. Therefore the burden of establishing some negligence of the carrier rested upon the libelants, because, the injury having resulted from an excepted cause, the carrier was not responsible unless his own negligence was affirmatively shown. Transportation Co. v. Downer, 11 Wall. 129, 20 L. Ed. 160; The Patria, 132 Fed. 972, 68 C. C. A. 397.

We are unable to concur with the District Court in the conclusion that such negligence is to be inferred from the fact that the condition of the shellac on the ship's arrival showed that it must have been subjected to a very unusually high degree of heat. That it was, and would in the nature of things, be subjected to a very high degree of heat on the voyage, especially through the Red Sea, is shown by the proof. That a very large part of it fused and ran together, although stowed in a particularly well-ventilated part of the ship, might indicate either, as the district judge inferred, that the ventilating apparatus was not properly employed or that this particular lot of shellac was of a grade peculiarly susceptible to heat, and thus fusible at a temperature lower than that to which it would be exposed with all proper attention to hatches and ventilators. Under the rule laid down in the cases cited we cannot find that there was negligence of the ship, which would deprive it of the benefit of the exception as to loss or damage from heat.

The decree is reversed, with costs, and cause remanded, with instructions to dismiss the libel, with costs.

NOTE.—The following is the opinion of Holt, District Judge, in the District Court.

HOLT, District Judge. The injury to the shellac in this case was undoubterly caused by heat. The bill of lading exempts the carrier from liability for damage caused by heat; but this, of course, does not exempt the carrier from liability for damage from heat caused by its own negligence. The Red Sea is notoriously a very hot place in summer, and, if the steamer had been obliged to stop there for several days, or any other cause for the application of extreme heat to the shellac had been shown, the question presented would have been different; but it appears from the evidence that this shellac was stowed in a particularly well-ventilated part of the ship, and, as there is no evidence that the ship's voyage was interrupted, it seems incredible, if the hatches were kept open and the ventilating apparatus properly employed, that there should not have been a constant current of air through the part of the ship where the shellac was stowed. The evidence, while showing that there were some hot days during the passage through the Red Sea, fails to show any unusual heat on this voyage, and the extraordinary condition of the

shellac on the ship's arrival shows that it must have been subjected to a very unusually high degree of heat. I cannot avoid the conclusion, from the evidence, that there must have been some negligence on the part of the officers of the ship, either in failing to keep the hatches open and the ventilating apparatus in good working order, or by which the shellac was subjected in some way to some extraordinary degree of heat. It is important, in such cases, for the protection of shippers, that the carrier be held strictly responsible. The carrier is entitled, of course, to the benefit of the exceptions in the bill of lading, when they properly apply: but, when their application involves the assumption that the carrier's negligence has brought about the condition of affairs which enables the carrier to raise a defense based upon an exception, it is obvious that the defense is untenable. The shipper, in such a controversy, is at a great disadvantage. All he knows is that the goods have been damaged. He can furnish no evidence as to how it occurred. In such a case, although the general rule is undoubtedly true that, when the damage is due to a cause which is excepted by the bill of lading, the shipper must prove that the damage has not been caused without the carrier's negligence, such proof may, in some cases, be furnished by the fact that the damage is so extraordinary that it could not have occurred without negligence.

My conclusion is that there should be a decree for the libelants, with the usual reference to fix the amount of damage.