THE KONIGIN LUISE

(Circuit Court of Appeals, Second Circuit. January 9, 1911.)

No. 105.

SHIPPING (§ 132*)—LIABILITY FOR INJURY TO CARGO—EXCEPTIONS IN BILL OF LADING—BURDEN OF PROOF.

Where a shipment of olive oil in barrels from Smyrna to New York was made under a bill of lading containing a clause that "the owner is not responsible for * * * leakage, breakage, land damage or any other injury resulting from the natural condition of the goods shipped or their deficiency of packing not externally recognizable," but also had a clause, "not accountable for leakage or breakage" stamped across it in large letters in different colored ink, the latter clause prevails over the one in the printed form, and to recover from the vessel for a loss resulting from leakage and breakage the shipper has the burden of proof to show negli-

---

gence, which cannot be inferred from the fact alone that the loss was greatly in excess of the normal, especially where secondhand barrels were used, some of which had been patched.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 479–482; Dec. Dig. § 132.*

Limitation of owner's liability, see note to The Longfellow, 45 C. C. A. 387.

Presumptions and burden of proof as to cause of loss or injury to goods shipped by vessel, and diligence or negligence of carrier, see note to The Patria, 68 C. C. A. 398.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Oil Seeds Company against the steamship Konigin Luise and the North German Lloyd, owner. Decree for libelant (173 Fed. 811), and claimant appeals. Reversed.

This cause comes here on appeal from a decree in favor of libelant in a suit brought to recover the leaked out portion of a consignment of 200 barrels of commercial olive oil, shipped from Smyrna to New York, and the portion of the freight covering the same. The libel is in rem against the steamship, and in personam against her owner. Under the bill of lading the oil was carried by the Therapia to Genoa, and there transhipped by the Konigin Luise to Hoboken. The North German Lloyd was the owner or operator of both ships. The opinion of the District Judge will be found in 173 Fed. 811.

Choate & Larocque (N. Shipman, of counsel), for appellant.
Wilcox & Green (Herbert Green, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The bill of lading acknowledges receipt of the merchandise in Smyrna for transportation "in good condition and order externally." The libelant also offered proof of the condition of the barrels when shipped, which fully confirmed the statement in the bill of lading. It appeared, also, that although in apparently good condition, they were not new barrels, but a mixed lot of secondhand barrels, some of them having patches on the staves. It is usual, however, to ship oil from Levant ports in such barrels, the normal per cent. of leakage varying from $1\frac{1}{2}$ to $5\frac{1}{2}$, depending somewhat upon the weather. There was no proof of bad stowage or mishandling. It is usual to stow such barrels six tiers high, but these were stowed in three tiers only. Upon arrival it was found that about 26 of the barrels were empty, 29 showed a large percentage of loss, and with a few exceptions, all of the others showed a certain amount of loss, the total amount being greatly in excess of $5\frac{1}{2}$ per cent. The empty or partly empty barrels showed broken staves, broken heads, loosened hoops, missing hoops, barrels squeezed out of shape, and similar damage, but nothing which might not easily be accounted for by the pressure of package against package, after a great reduction of the contents through leakage had left a package less able to withstand such pressure. No barrel was gone or broken down, they

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

all lay in the tiers, and it was not till removal commenced that their condition became apparent. The bill of lading is on a printed form (in German and French) containing a great many clauses. One of them reads as follows:

"The owner is not responsible for * * * leakage, breakage, land damage or any other injury resulting from the natural condition of the goods shipped, or their deficiency of packing not externally recognizable."

Commenting on this clause the District Judge said:

"If the exception were leakage and breakage only, it might be that the burden of further proof on the matter, if required, would be upon the libelant, but, when such words of exception are qualified as stated above, it becomes questionable if such be the case."

He found for the libelant on the decision of this court in Doherr v. Houston, 128 Fed. 594, 64 C. C. A. 102, where the written exception was "not accountable for chafage or breakage to insufficiently protected property," and we held that to avail of such exception the carrier must show that the property *was* insufficiently protected. In the case at bar, however, the bill of lading contains a clause, stamped upon it in larger type and different colored ink, thus making it more prominent than any of the other conditions, and reading:

"Not accountable for leakage or breakage."

That clause prevails over the one referring to "leakage and breakage" in the printed form, and makes Doherr v. Houston inapplicable.

We have then a case where all that appears is that the leakage and breakage is greatly in excess of the ordinary percentage. A similar case was before us in The St. Quentin, 162 Fed. 883, 89 C. C. A. 573, where the District Judge held that, there being an exception of "heat, damage," proof of the carrier's negligence may "be furnished by the fact that the damage is so extraordinary that it could not have occurred without negligence." Of this proposition it was said:

"We are unable to concur with the District Court in the conclusion that such negligence is to be inferred from the fact that the condition of the shellac on the ship's arrival showed that it must have been subjected to a very unusually high degree of heat. That it was, and would in the nature of things, be subjected to a very high degree of heat on the voyage, especially through the Red Sea, is shown by proof. That a very large part of it fused and ran together, although stowed in a particularly well-ventilated part of the ship, might indicate either, as the District Judge inferred, that the ventilating apparatus was not properly employed or that this particular lot of shellac was of a grade peculiarly susceptible to heat, and thus fusible at a temperature lower than that to which it would be exposed with all proper attention to hatches and ventilators. Under the rule laid down in the cases cited (Transportation Company v. Downer, 11 Wall. 129 [20 L. Ed. 160]; The Patria, 132 Fed. 972 [68 C. C. A. 397]), we cannot find that there was negligence of the ship, which would deprive it of the benefit of the exception as to 'loss or damage from heat.'"

To the same effect is our decision in The Baralong, 172 Fed. 220, 97 C. C. A. 24.

The case at bar is distinguishable from The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546. In that case the exceptions relied on were "not liable for sweat" and "dangers and accidents of the seas excepted." Upon the record this court was not agreed as to the cause

of the damage, which concededly was from water, two of us finding that the water came from the sea, and one that it came from precipitation of moisture produced by sweating of the cargo. The Folmina, 153 Fed. 364, 82 C. C. A. 440. There was much conflicting testimony, some of it highly scientific, on this point. When the question was certified by us to the Supreme Court, the finding of the majority was incorporated in the certificate, and that court was advised that the damage was from sea water. Its decision was of course based on that finding. It will be noted that there is no exception of "damage by sea water." Had there been such an exception there would have been no necessity for certifying the question, because the conceded fact that the damage was by water (either sea water or sweat) would have brought it specifically within one or other exception. But to bring sea-water damage within the exception "perils of the sea," it was necessary to go further and find that it was a peril of the sea, and not something else (such as negligence of some sort) which brought the sea water into contact with the cargo. Until the ship had shown that the presence of the sea water was due to a sea peril rather than to negligence, it would not be shown that the damage was within the language of the enumerated exception. The distinction has been repeatedly pointed out. In The Lennox (D. C.) 90 Fed. 308, Judge Brown held that:

"Where a loss arises from one of the excepted perils [in that case breakage] the ship is prima facie excused, and she can only be held liable upon affirmative proof that some negligence on her part was the efficient cause of the loss. * * * Conversely, where the loss is not by an excepted peril, the carrier takes the risk of explaining the cause of damage and of proving it to be a sea peril. It is insufficient for him to negative certain causes of loss; if on the whole the damage is unexplained, the ship in such case remains liable, because she has taken that risk."

See, also, The Timor (Second Circuit) 67 Fed. 356, 46 C. C. A. 412; The Henry B. Hyde (Ninth Circuit) 90 Fed. 114, 32 C. C. A. 534; The Patria (Second Circuit) 132 Fed. 971, 68 C. C. A. 397.

In the case at bar the sole damage was concededly due to "leakage and breakage," a cause which is specifically excepted. Therefore the ship is prima facie not liable, and we do not find in the proof sufficient to hold that there was negligence of the claimant and respondent, which would preclude it from relying on the exception.

The decree is reversed, with costs of this appeal, and cause remanded, with instructions to dismiss the libel, with costs.