## THE GOOD HOPE.

(Circuit Court of Appeals, Second Circuit. May 13, 1912.)

Nos. 205–207.

1. SHIPPING (§ 141*) — CONSTRUCTION OF BILL OF LADING — "HEAT" AND "HEATING."

The words "heat" and "heating," as used in a ship's bill of lading in stating the causes of damage to cargo for which she will not be liable, are synonymous.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 493, 497–499; Dec. Dig. § 141.*

For other definitions, see Words and Phrases, vol. 4, p. 3239.]

2. SHIPPING (§ 132*)—LIABILITY FOR DAMAGE TO CARGO—EXCEPTIONS IN BILLS OF LADING.

To entitle a shipper to recover for damage to cargo from heat when liability for such damage is excepted in the bill of lading, he has the burden of showing that such heat was caused by the ship's negligence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

3. SHIPPING (§ 132*)—LIABILITY FOR DAMAGE TO CARGO—NEGLIGENT STOWAGE.

Damage to a portion of a cargo of jute stowed directly under a hatch on a voyage from Calcutta to New York held, on the evidence, to have been caused by heating due to rainwater entering the hatchway which was negligently left open while the ship was loading, from liability for which she was not exonerated by provisions of the bills of lading exempting her from liability for damage by heating or by rain.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*

Liabilities of vessel owners for loss or injury from improper stowage, see note to The Gualala, 102 C. C. A. 553.]

Appeals from the District Court of the United States for the Southern District of New York.

Suits in admiralty by the Chelsea Fiber Mills, Robert Balfour and others, and Henry P. Winter and others, respectively, against the steamship Good Hope, Edward R. Norton and others, claimants. Decree for libelants, and claimants appeal. Affirmed.

For opinion below, see 190 Fed. 597.

These causes come here upon appeals by the claimants from decrees in admiralty, in favor of the libelants in the above three suits. The libels were filed to recover for alleged shortage and damage to consignments of jute in bales, carried on the Good Hope from Calcutta and discharged at New York. The damage was manifestly caused by moisture, heat, and consequent decay. The district judge held the vessel liable. His opinion, stating the substantial facts, will be found in 190 Fed. 597.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Convers & Kirlin (J. Parker Kirlin and Russell T. Mount, of counsel), for appellants.

Campbell, Harding & Pratt (Donald Campbell, of counsel), for Chelsea Mills.

Taft & Sherman (Theodore M. Taft, of counsel), for Balfour and others.

G. W. Betts, for Winter and others.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). [1] Manifestly the damage was caused by "heat" or "heating." The district judge so finds, and we agree with him. Those two words are synonymous as used in the bills of lading. The heating caused the decay, and was itself caused by the presence of moisture. That proposition is seemingly not disputed, but claimants insist that it was due to "the inherently moist condition of the jute when it was loaded on the Good Hope at Calcutta."

The libel asserted that the Good Hope was not seaworthy for the purpose of carrying these shipments on the theory that the "turret type" of ship is not fit to carry jute. The District Court found against the libelants on this proposition, and apparently it is not contended here that his conclusion in that respect was erroneous.

The district judge also was not satisfied that the obligation of the vessel to properly stow the cargo was performed. The opinion does not indicate in what particular the stowage was improper, and we do not find sufficient in the testimony to persuade us that it was improper.

[2] Among the exceptions in the bill of lading are "rain," "heat" (or "heating") and "decay," and it is upon these exceptions that claimants rely to excuse the failure of the ship to deliver all the jute received in good condition. Undoubtedly the cause of the decay and loss was "heat"—the evidence to that effect is undisputed—and heat is an excepted cause. The District Court held that the burden of showing that the heat was not caused by the negligence of the ship was on her. In this conclusion we cannot concur. It is contrary to the decisions of this court in The St. Quentin, 162 Fed. 883, 89 C. C. A. 573, and The Baralong, 172 Fed. 220, 97 C. C. A. 24, following our earlier decisions in The Patria, 132 Fed. 972, 68 C. C. A. 397, and The Folmina, 153 Fed. 364, 82 C. C. A. 440. There is nothing in the opinion of the Supreme Court, in answer to the questions subsequently certified in The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748, which qualifies these decisions. The Folmina was a peculiar case; there being a disputed question of fact as to whether the damage was caused by salt water or by fresh water. On that question this court was divided. When the facts came to be certified to the Supreme Court, the finding of the majority of this court that it was caused by sea water was included, and the Supreme Court held that an exception of "perils of the sea" will not avail a vessel which delivers its cargo damaged by sea water without anything to indicate

in any way how the sea water reached it, which was just what this court had already held in The Patria.

[3] The testimony in the cause at bar, however, satisfies us sitting as jurymen to find the facts that the damage resulted from the negligence of the ship, because at some time during the process of loading rain was allowed to fall into the hold through an open hatch. Thus there was moisture, additional to the normal quantity, brought into the very heart of the cargo, where with least possible ventilation it would naturally do most damage.

The evidence to support this conclusion is largely circumstantial. but none the less persuasive. Briefly stated, it is as follows: The damage was strictly localized to a position under No. 2 hatch. After six tiers of jute, which had not been damaged, were removed, there was found a mass of damaged jute constituting practically a cube of about 12 or 15 feet in length, width and height. It was shown that whatever moisture was present was not salt. Therefore all question of sea water damage is eliminated. It was suggested that the inherent moisture of bales of jute shipped from Calcutta, where the jute is brought in already baled from many different places, varies greatly, and that it might have happened that some particular lot had been baled at such a time of the year or under such circumstances as to retain an abnormal amount of moisture within the bale, while its exterior might have seemed as dry as usual and the bale thus accepted as in good condition. The difficulty with that theory, however, is that in the single clearly defined locality where the damaged jute was found there were bales and parts of bales of many different marks, coming from different places, and that other bales of the same mark distributed elsewhere, even in places where there could be practically no ventilation, did not exhibit the same damage. Nor was there any similar damage below any of the other hatches where jute was stored, although the conditions as to ventilation were absolutely the same and marks were miscellaneously stowed through the space appropriated to this kind of cargo. It puts too severe a strain upon the calculus of probabilities to assume that all the bales abnormally moist happened to be stored in this particular location.

It was also suggested that these damaged bales might have got wet on the lighter on which they were carried to the ship. Such wetting could not have been sea water, for there is no suggestion of salt water moisture being found. It is, of course, possible that some particular lighter might have been caught in a tropical shower and absorbed considerable moisture, although a bright sun might have dried up the exterior of the bales sufficiently to make them appear in good order and condition. But the testimony affirmatively shows that the contents of the respective lighters, as they were discharged, were stowed in rows from side to side clear across the hold. That being so, it would not be possible for bales, which were delivered wet from some particular lighter, to be grouped together as were these damaged bales in the central part of several successive rows, with no wet bales stowed beyond that portion either way.

There is testimony that when the ship was loading, although it was

generally dry, fine weather, they "did have some rain, too." The same witness, the carpenter, testified that, when it started to rain, they put on hatches and tarpaulins. But we do not understand that this witness was never absent during loading, and it is so evident that the water came to the damaged bales through the opened hatch before the loading was completed—while six tiers were yet to be stowed—that we are satisfied there was at least one occasion when the hatches and tarpaulins of this hatch were not put on in timê. In our opinion libelants have shown, by a fair preponderance of proof, largely circumstantial, that the cause of the damage was rain which reached the damaged bales through an open hatch.

"Loss or damage by rain" is among the exceptions, but that does not protect the ship if the presence of rain is due to the negligence of those in charge of her. It may quite well be that the exception could be availed of if some sudden shower or cloudburst had precipitated a downfall of rain through the open hatch not reasonably to be foreseen. But ordinarily this does not happen. When we find a hatch left open during a rainfall, we infer without further explanation that there was negligence on the part of the ship.

Although the burden of proof in this cause was upon the libelants, we are satisfied it was fully sustained, and think the decree should be affirmed with interest and costs.