THE KORANNA.

(District Court, S. D. New York. May 7, 1914.)

1. SHIPPING (§ 132*)—SUIT FOR INJURY TO CARGO—BURDEN OF PROOF.

When damages which are attributable to causes excepted in the bill of lading are sustained in the transportation of merchandise, the burden of proof is upon the shipper to show that the loss occurred through the negligence of the carrying vessel.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

2. SHIPPING (§ 132*) — SUIT FOR INJURY TO CARGO — STOWAGE — EVIDENCE — FOREIGN CERTIFICATE OF SURVEY.

A certificate of survey executed in a foreign port, showing that the cargo of a vessel was inspected on loading and was properly stowed, held admissible in a suit against the vessel for injury to the cargo alleged to have been due to improper stowage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

3. SHIPPING (§ 132*)—DAMAGE TO CARGO—ALLEGED IMPROPER STOWAGE.

Evidence considered, and held insufficient to sustain a libel for damage to a part cargo of cocoanut oil in casks, on a voyage from Ceylon to New York from leakage caused by breaking of the casks alleged to have been due to improper stowage, but rather to show that it was due to the insufficiency in strength of the casks for such a voyage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. § 132.*]

In Admiralty. Suit by Henry P. Winter and others, doing business under the firm name of Winter & Smillie, against the steamship Koranna and the Bucknall Steamship Lines, Limited. Decree for respondents.

Hunt, Hill & Betts, of New York City (George Whitefield Betts, Jr., and John W. Crandall, both of New York City, of counsel), for libelants.

Convers & Kirlin, of New York City (John M. Woolsey and Cletus Keating, both of New York City, of counsel), for respondents.

HAZEL, District Judge. On September 23, 1910, the English steamer Koranna brought to the port of New York from Colombo, Ceylon, a large quantity of cocoanut oil in pipes or casks loaded into the after hold of the steamer, 25 of which, weighing 65,125 pounds, were consigned to libelants, a firm doing business in the city of New York. The voyage, lasting nearly two months, began in the monsoon, and the evidence shows that the steamer rolled considerably in the Indian Ocean and later, in the Atlantic Ocean encountered gales and storms. On her arrival·in New York about 18 of the pipes or casks of cocoanut oil were in bad condition evidently, as claimed, having received damage from external causes; 13 were nearly empty; while the others contained only about one-half of their original contents. An inspection made at that time disclosed one cask practically demolished, ten with staves depressed or bulged at the bilges, and others with the staves or chimes broken or squeezed out of place.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] Libelants claim that the injury to the casks was caused by negligent stowage, and in support of such claim introduced testimony to show that the bilges of the pipes, which were stowed in three tiers, one on top of the other, were permitted to contact with each other or with the deck; while the respondents claim that negligent stowage is not shown, and that the evidence in its entirety establishes that the pipes were stowed in accordance with the usage and custom of the port of Colombo, and that the abnormal leakage was due solely to imperfections in the construction of the pipes. It is my conclusion that the libelants have not established their case by a fair preponderance of the evidence. It is well settled, I think, that, whenever damages which are attributable to causes excepted in the bill of lading are sustained in the transportation of merchandise, the burden of proof is upon the libelant to show that the loss occurred through the negligence of the carrying vessel as she is not permitted to exempt herself from the consequences of her negligence or lack of diligence and care in the transportation of property. The Lennox (D. C.) 90 Fed. 308; The Konigin Luise, 185 Fed. 478, 107 C. C. A. 578. As this case is one where concededly the loss was from an expected peril, the material question is: Was the custody stowage, or care of the cargo improper and fraught with misconduct amounting to negligence? If the pipes of cocoanut oil in question were stowed at the beginning of the voyage in accordance with an established usage in transportation for a long voyage, then, giving effect to the printed bill of lading in evidence herein, providing that the carrier shall not be liable for drainage, leakage, breakage, contact with other goods, or for insufficient packing, the libelants are without remedy and cannot recover.

[2] There is some testimony indicating that the bilges of the casks were not sufficiently separated and were permitted to come in contact, that coir dolls and yarn were used between the tiers instead of scantlings and quoins, and it is argued that the failure to use scantlings or quoins was negligence, as the coir dolls and yarn, because of their yielding qualities, were unable to keep the casks from touching. I am, however, satisfied from the evidence given in behalf of the steamer that there was proper clearance between the casks, and that they were not stowed with contacting bilges, and that the pipes or casks were placed in the customary way in accordance with the rules of the Chamber of Commerce of the port of Colombo. The certificate of survey was introduced in evidence, over objection, to show that the lower tier was inspected at the time of loading to make certain that it was properly quoined; and I am of opinion that said certificate, executed in a foreign country, was properly admitted. The Boskenna Bay (D. C.) 22 Fed. 662; The J. F. Spencer, 3 Ben. 339, Fed. Cas. No. 7,315; The Peerless, 1 Lush. 41, Fed. Cas. No. 4,494. There was, however, other testimony upon this point.

[3] The witness Hemming substantially testified, as careful reading of his testimony will disclose, that the bottom tier of pipes (which contained the only injured ones) was properly quoined up at each end with a piece of timber 4 feet long and 4 inches square, while small quoins, wedges, or chocks were used in the ordinary way to hold the

casks in place. The witness Batcheller gave testimony to a similar effect, while the witness Ricardo, foreman of the stevedores who unloaded the vessel on her arrival, and the witness Lynch, testified in substance that the first tier of casks had quoins 4 inches square and 2 feet in length with a clearance of 3 inches underneath, and that the upper tiers were separated by beds of coir yarn. In some particulars the testimony relating to the stowage is discrepant, and respondents' witnesses in some instances have contradicted each other; but nevertheless the evidence in its entirety convinces me that the steamer was not negligent in stowing or caring for the cargo in question.

There was evidence to show that a platform had been erected in the hold with stanchions extending through the spaces left by the variable circumference of the casks, upon which were stowed pipes of cocoanut oil and other merchandise. It appears, however, that the platform had a clearance of fully three or four inches above the upper tier of pipes, and I find no reliable testimony to establish the claim that it sagged or came in contact with the casks underneath.

There is much testimony in support of respondents' contention that the casks lacked strength and durability for so long a voyage. It is indisputable that the pipes of other shipments stowed in the same hold in the same way and subject to similar strains arrived in good condition, while libelants' casks were considerably damaged. Several coopers, who were witnesses, swore that the staves of the casks from which the oil leaked were old and rotted, and could easily be indented; also staves were found bearing score marks indicating repeated use. Three of the casks in question were inspected by the court on the sidewalk in front of the courthouse, and it was quite apparent that part of the staves were pressed in at the quarters and were old and tender to pressure, and that the bilges were impaired. It is quite true that cocoanut oil soaks into the wood and gives it a moldy appearance; but in the casks inspected by me the newer staves, which were easily distinguishable from the older ones, looked strong and lasting, while those that had evidently been previously used were decidedly weak and dilapidated, leaving the impression in my mind that the leakage was caused by improper cooperage in combining old and worn-out staves with new ones, thus producing casks which were unable to withstand the weight of their contents and the strains of the voyage.

Accordingly, the clause in the bill of lading exempting the carrier from liability for drainage, leakage, breakage, contact with other goods, or insufficiency of packing, must be given effect, and, as it has not been proven by a fair preponderance of the evidence that the loss or damage which is the subject of this controversy was sustained by reason of the negligence of the vessel, the libel is dismissed, with costs.