## S. A. GERRARD CO. OF NEW YORK, Inc., v. THE PRINCE LINE.

District Court, S. D. New York.
April 12, 1932.

Bigham, Englar, Jones & Houston, of New York City (James N. Senecal, of New York City, of counsel), for libelants.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Charles R. Hickox, L. De Grove Potter, and Michael F. Whalen, all of New York City, of counsel), for respondent.

KNOX, District Judge.

This is a cargo damage suit, and the libel sets out two alleged causes of action. In the first, the averment is that libelant made certain shipments of pears on one of respondent's vessels and that the merchandise was to be carried "in accordance with the valid terms of certain bills of lading issued by the duly authorized agent of the said respondent." It is also said that the merchandise was in good order and condition when delivered on board, but that, on reaching its destination, the same was "short, rotted and otherwise seriously damaged and depreciated in value." Other than this, there is no charge of negligence against respondent.

The second alleged cause of action is to the effect that respondent specifically agreed to maintain a temperature of not less than 30 degrees and not more than 34 degrees Fahrenheit in the refrigerated compartment in which certain grapes were to be carried, and that, as a result of failure of respondent to perform its agreement, the fruit was damaged.

So far as the exceptions to the second cause of action are concerned, I believe them to be without substance under Northern Pacific R. R. Co. v. American Trading Company, 195 U. S. 439, 25 S. Ct. 84, 49 L. Ed. 269, and they are overruled. Furthermore, since respondent addresses its argument only to the first alleged cause of action, its acquiescence in the disposition of the other exception will be assumed.

The instant bills of lading contain the clause: "2. * * * Without limitation or restriction of any of the terms of this bill of lading, the shipowner shall not be liable for any loss, damage or delay whatsoever with respect to or in connection with the said goods unless such loss, damage or delay is shown to have been caused by the shipowner's negligence and the burden of proving

negligence shall be on the party asserting it. An inference of negligence shall not be drawn from the fact or extent of loss, damage or delay."

■ Thus, there is presented the question as to whether a consignee or holder of such bill of lading can plead a good cause of action for damage to cargo shipped thereon without affirmatively alleging that the loss and damage to the goods was due to the negligence of the carrier.

Libelant contends that the aforementioned interpretation of the bill of lading is invalid, in that it is an attempt to escape the provisions of sections 1 and 2 of the Harter Act (46 USCA §§ 190, 191), which prohibits a carrier from relieving itself from liability for negligence in loading, storing, caring for the goods, or in making proper delivery thereof, and for a failure properly to man, equip, and outfit the vessel which carries merchandise.

Respondent, on the other hand, vigorously asserts that the Harter Act is in no way involved and that, since there is no limitation on the number of specific exemptions that a shipowner may insert in a bill of lading, so long as the Harter Act is not transgressed, a stipulation for exemptions from liability which is general in its terms, and which obviates the necessity of a lengthy enumeration of specific exemptions, is not open to objection. It says that were a carrier to enumerate, so far as legally permissible, every conceivable cause of damage in its bill of lading, its obligation, when loss occurred, would be merely to show the same to be within one of the specified exceptions, whereupon the burden of showing negligence justifying a recovery would rest upon the shipper. Hence, concludes respondent, the respective legal positions of shipper and carrier are unaffected by the clause here brought to the court's attention.

In a sense, this is true. At the same time, the burden which the clause in question would initially place upon a shipper is far more onerous than that which he is ordinarily asked to bear. In many meritorious instances, I should imagine the burden would be so heavy that even a strong, diligent, and resourceful shipper would be unable successfully to carry it.

In the first place, a shipper whose goods are delivered in damaged condition, if he were to come to court at all, would be required to swear that the carrier of his goods had been guilty of negligence, when, as a matter of fact, he might have no knowledge or worthwhile information on the subject. More often than otherwise, the events of a particular voyage, and knowledge of what happens to goods while in the custody and control of the carrier, are confined to the minds of its agents, and they, it may be assumed, will not voluntarily disclose their knowledge of it, tends to show their own fault, or if it will, through other channels, impose liability upon their principal. Under conditions such as are here sought to be imposed, the holder of a bill of lading would be wholly in the dark, and, practically speaking, helpless. So far as negligence may have brought damage to the goods, the shipowner, through the medium of the present stipulation, could accomplish indirectly the very thing forbidden by the Harter Act. In my opinion, respondent's suggestion that the law provides legal machinery to enable a consignee or shipper to bear the burden imposed upon him by this stipulation through interrogatories annexed to the libel, by bill of discovery, and by examining the ship's officers if need be, is not wholly accurate. As pointed out above, a shipper, if he is to be permitted to propound interrogatories to the shipowner, will be under the necessity of making allegations which he does not know to be true. If resort must be had to a bill of discovery, it means circuity of action that is not usually necessary, and could be taken only with the expenditure of time, effort, and money that ought not to be necessary. Additionally, the names and whereabouts of witnesses possessing knowledge of the matter in issue would be within the greater knowledge of the shipowner, and this, as pointed out above, would not be disclosed unless under compulsion.

Further, still, in the use of the stipulation in controversy, there is an apparent effort of the shipowner to excuse itself from every possible source of damage to the cargo without a specification of the perils, from which it seeks to escape liability. It seems extremely doubtful if a clause of this breadth should be allowed to stand. If the language employed be given its full force and effect, the recovery of damages from an unexplained cause of injury to cargo would be foreclosed. In The Lennox (D. C.) 90 Fed. 308, 309, approved in The Konigin Luise (C. C. A.) 185 Fed. 478, Judge Brown said: "Where the loss is not by an excepted peril, the carrier takes the risk of explaining the cause of the damage and of proving it to be a sea peril. It is insufficient for him to negative certain causes of loss; if on the whole the damage is unexplained, the ship in such

case remains liable, because she has taken that risk."

To this may be added the observation of Mr. Justice Nelson in New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 383, 12 L. Ed. 465, to the effect that when a public carrier seeks to exempt itself from the duties incident to the carriage of goods, "the exemption * * * should not depend upon implication or inference, founded on doubtful and conflicting evidence; but should be specific and certain, leaving no room for controversy between the parties."

Certainly, the clause in question is not framed so as to accomplish that end. If it be argued that the stipulation has reference in the last analysis, only to the procedure to be followed in making out a case of liability on the part of a shipowner, and if it be assumed that the court is without voice in the matter (which, obviously, is not the fact), practice under such procedure could not help but result in situations whereby "the obligation of the owner * * * to exercise due diligence * * * and to make said vessel seaworthy or * * * the obligation of the master * * * to carefully handle and stow her cargo and to care for and properly deliver same * * * will be 'lessened, weakened or avoided.'" The effort so to do must fail. See The Skipsea (C. C. A.) 9 F.(2d) 887; Philippine Refining Corp. v. U. S. (D. C.) 29 F.(2d) 134; and the Southwark, 191 U. S. 1, 24 S. Ct. 1, 48 L. Ed. 65.

For the reasons specified, the clause in question cannot serve to require the amendment or dismissal of libelant's first alleged cause of action, and the exception thereto will be overruled.