## THE MONTE ICIAR.

### No. 9297.

Circuit Court of Appeals, Third Circuit.

Argued May 6, 1947.

Reargued Dec. 17, 1947.

Decided March 18, 1948.

---

O'CONNELL, Circuit Judge, dissenting.

———◆———

George E. Beechwood, of Philadelphia, Pa. (Conlen, La Brum & Beechwood, and James B. Doak, all of Philadelphia, Pa., on the brief), for appellant.

Thomas F. Mount, of Philadelphia, Pa. (Rawle & Henderson, Harrison G. Kildare and Joseph W. Henderson, all of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, GOODRICH, McLAUGHLIN, O'CONNELL and KALODNER, Circuit Judges, and FOLLMER, District Judge.

McLAUGHLIN, Circuit Judge.

Appellant sued in admiralty for shortage in a consignment of sherry owned by it and shipped on board the S. S. Monte Iciar from Cadiz, Spain to Philadelphia. The libel was dismissed by the district court and from the final decree entered in the case this appeal was taken.

The shipment consisted of seventy wooden barrels containing dry sherry. The bill of lading for the wine had stamped across its face the notation "Not responsible for Leakage Breakage or Spigoting." The barrels though not new appeared in sound condition when loaded aboard the vessel and bore no evidence of any loss of contents at the time. After a voyage without untoward incident, the ship arrived at Philadelphia April 9, 1944. Prior to discharge inspection of the 'tween decks occupied by the shipment gave no suggestion that the latter had shifted during the voyage. Following discharge of the wine on April 12 and 13, 1944, the floor and dunnage wood of the particular 'tween decks were found to be clean and dry. The cargo's discharge was accomplished in the customary and accepted manner and none of the barrels was observed to be leaking during that operation.

A day or two after discharge, when the entire cargo of 391 barrels of wine (including the shipment in question of seventy barrels) was on the pier, the ship's second officer observed one barrel leaking. Thereafter the Captain observed "some" barrels leaking from the joints of the barrel staves.

Neither officer identified the leaking barrels as part of appellant's consignment. On April 17, 1944 the Customs authorities at Philadelphia gauged seven barrels of the shipment on the pier. Those particular barrels seem to have been recoopered prior to gauging. Thereafter, on application by appellant's agent, the wine was permitted to be shipped under an "In Transit" bond to Baltimore, Maryland. The bill of lading covering the transportation via railroad to Baltimore contained a notation that seven barrels had been recoopered. The remaining sixty-three barrels were in good condition when delivered to the railroad. After the wine had arrived at Baltimore several of the barrels in one car were found to be leaking so badly that wine was flowing from the car door. Two of the barrels had loose hoops, one had a damaged stave and four were leaking at the bungs and heads. The leaking barrels were all within one general location in the same freight car and stowed in adjacent rows. No leakage was noted in the other two cars. Recovery was sought for the shortage which appeared from the Customs gauge at Philadelphia. No claim was made for any loss between Philadelphia and Baltimore. The litigation was before the lower court on the question of liability alone.

Appellant, claiming that the Carriage of Goods by Sea Act, 49 Stat. 1207 et seq., 46 U.S.C.A. § 1300 et seq., applied, asserted that the appellee had neither brought this loss within any of the Act's exemptions nor shown itself to be without fault in the matter. The district court held that in view of the facts the Harter Act, 27 Stat. 445, 46 U.S.C.A. § 190 et seq., controlled, saying [6–7 F.Supp. 207], "Under the Harter Act, respondent is not liable to libellant because the loss was brought within a valid exception of the contract of carriage, and libellant failed to negative the effect of the exceptive clause by showing negligence on the part of respondent, its agents, or servants."

Section 1(e) of the Carriage of Goods by Sea Act provides that "The term 'carriage of goods' covers the period from the time when the goods are loaded on to the time when they are discharged from the ship." And by Section 3(2) "The carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." There was no stipulation in connection with the shipment of the wine which extended the control of the Carriage of Goods by Sea Act beyond its own terms.

Both the barrel damage and wine leakage were first observed at an appreciable interval after the cargo's discharge and the evidence fails to justify any inference that such damage and leakage were caused during the period from loading to discharge. The only testimony regarding stowage was that the method employed was customary and proper for ships of the type of the Monte Iciar. Inspection of the barrels on the dock the morning of April 13, 1944 revealed no hint of leakage. There were dry stains on the outside of the barrels but these were occasioned because "they were reused barrels." In addition, as already noted, there had been no sign of the barrels shifting en route and the wine's cargo space after discharge was clean and dry. From those proofs the trial judge was bound to find as he did that the loss of the wine did not arise under the Carriage of Goods by Sea Act.

The Harter Act though for the most part superseded by the Carriage of Goods by Sea Act admittedly can be applicable to the period subsequent to discharge and up until delivery of the cargo. It "still has such effect as may be, prior to the loading and subsequent to the discharge of the goods". I Benedict on Admiralty, 6th Ed., Section 95, p. 287. Whatever doubt there might be regarding it controlling the instant situation is resolved by the bill of lading itself which specifies the destination of the wine as "Philadelphia in transit to New York".[1] We conclude therefore that by reason of the Harter Act the ship was responsible for due care of the wine during the period after its discharge from the Monte Iciar and prior to its delivery to the rail carrier, when the loss of contents from the seven barrels was ascertained by the Customs gauge. And this makes the clause

---

[1] The wine apparently was sold while on the high seas and the new owner, the appellee, arranged through its customs agents for its shipment to Baltimore instead of New York.

in the bill of lading reading, "Not responsible for leakage breakage or spigoting," of prime importance since exceptions to a bill of lading are permissible under Section 1 of the Harter Act if nothing is inserted whereby relief is given from liability for negligence in "loading, stowage, custody, care or proper delivery".[2]

■ Appellant urges that the exception to the bill of lading in this matter is "an attempt to exclude a certain type of loss irrespective of the negligence of the carrier." If this were so we would agree that Section 1 of the Harter Act would render the exception "null and void." But that is not what is before us. The loss of wine was caused by leakage which is within the exception to the bill of lading, and "when the damage is manifestly of the sort excepted, the ship is under no obligation to show the promoting cause." The Patria, 2 Cir., 132 F. 971, 972. The burden was then upon the appellant to prove that the damage resulted from the carrier's negligence. The Henry B. Hyde, 9 Cir., 90 F. 114, 115. As in the Hyde case there was no evidence here pointing to such negligence. Probably the leading opinion on the subject is The Folmina, 212 U.S. 354, at page 362, 29 S.Ct. 363, at page 365, 53 L.Ed. 546, 15 Ann.Cas. 748, where Chief Justice White for the court said: "Of course, where goods are delivered in a damaged condition plainly caused by breakage, rust, or decay, their condition brings them within an exception exempting from that character of loss, as the very fact of the nature of the injury shows the damage to be prima facie within the exception, and hence the burden is upon the shipper to establish that the goods are removed from its operation because of the negligence of the carrier."

To the same effect see The Malcolm Baxter, Jr., 277 U.S. 323, 334, 48 S.Ct. 516, 72 L.Ed. 901; The Isla De Panay, 2 Cir., 292 F. 723, 728, 729, affirmed 267 U.S. 260, 45 S.Ct. 269, 69 L.Ed. 603.

■ In an attempt to avoid the established rule of the above cases, namely, where the loss is shown to be within the exception to the bill of lading the shipper must prove negligence of the carrier, it is urged that Section 3 of the Harter Act governs the situation. By that section if the carrier exercises due diligence it will not be held responsible for damage resulting from causes there enumerated, including "the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, * * * or for loss resulting from any act or omission of the shipper or owner of the goods * * *." It is argued that because of this section, for the carrier to prevail by an exception to a bill of lading, it must prove due care until delivery to the shipper's agent and that the damage arose from one of the causes mentioned in Section 3. In support of this novel proposition the case of Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L. Ed. 373 is presented. That decision departs in nowise from the doctrine of The Folmina, supra. It cites that case with approval and Chief Justice, then Mr. Justice, Stone says on pages 304 and 305 [of 293 U. S., page 196 of 55 S.Ct.] of the opinion: "It is commonly said that when the carrier succeeds in establishing that the injury is from an excepted cause, the burden is then on the shipper to show that that cause would not have produced the injury but for the carrier's negligence in failing to guard against it. Such we may assume the rule to be, at least to the extent of requiring the shipper to give evidence of negligence where the carrier has sustained the burden of showing that the immediate cause of the loss or injury is an excepted peril."

In the Schnell case there was an exception to the bill of lading from liability for damage by "decay" and the court did remark that "decay of a perishable cargo is not a cause; it is an effect". Actually the exception was not sustained because the

---

[2] Nor is such exemption clause contrary to the Carriage of Goods by Sea Act, Section 7 of which reads:

"Nothing contained in this chapter * * * shall prevent a carrier or a a shipper from entering into any agreement, stipulation, condition, reservation, or exemption as to the responsibility and liability of the carrier or the ship for the loss or damage to or in connection with the custody and care and handling of goods prior to the loading on and *subsequent to the discharge from the ship* on which the goods are carried by sea." (Emphasis ours).

reason for the decay was shown to be the carrier's negligence, the court stating at page 306 of 293 U.S., page 197 of 55 S.Ct., *"For here want of diligence in providing proper ventilation is established and it is found that the failure to ventilate has caused the damage."* (Emphasis ours).

True, by Section 3 of the Harter Act, the carrier through due diligence can exempt itself from liability for damage from the causes listed in that section, but this in no way conflicts with the right of the carrier under Section 1 to exempt itself from responsibility for damage from other causes by proper exception to the bill of lading, always provided it does not thereby relieve itself from the consequences of its own negligence. Nor is the Schnell opinion authority for the appellee being put to explain the reason for the leakage. That case stands simply for the sound doctrine which is not disputed that the exceptions in a bill of lading do not eliminate the carrier's responsibility for its negligence. Under the facts here as said in the Patria opinion, supra [132 F. 971, 972], "the ship is under no obligation to show the *promoting cause*" (emphasis ours) of the excepted damage.

The decree of the district court will be affirmed.

O'CONNELL, Circuit Judge (dissenting).

Because I believe the opinion of the majority of this court to be inconsistent with the basic principle underlying the Harter Act, and because the effect of the holding in the instant case seems to me to limit severely the doctrine enunciated in Schnell v. The Vallescura, 1934, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373, I am compelled to dissent.

As is stated in the opinion of the majority of this court, the loss of contents from seven barrels was ascertained prior to the delivery to the rail carrier. The testimony of both the customs officer and the ship's agent indicates that these barrels remained in the sole custody of appellee until the shipment was delivered to the rail carrier.[1] Moreover, the recoopering was performed at the instance of the ship's agent.

Under the circumstances, is it logical to place the burden of establishing the cause of the loss upon any one other than appellee, the custodian of the shipment? To guarantee, if not enlarge, the shipper's rights in cases like that sub judice, it seems to me, was precisely the purpose of the Harter Act, which not only nullified any contractual provisions designed to relieve the carrier of liability for its negligence, but also provided in substance that the carrier has "the burden of the loss which *he* [the carrier] cannot explain or, explaining, bring within the *exceptional* case in which he is relieved from liability." Schnell v. The Vallescura, 293 U.S. at page 304, 55 S.Ct. page 196; emphasis supplied.

If the foregoing statement in the Schnell case is a correct exposition of the law, then it must mean that appellee had the burden of going forward with proof of the cause of the loss. This view, indeed, is in conformance with Section 3 of the Harter Act, relieving a carrier of liability only when that carrier brings itself within one of the exceptions specified therein. Among the enumerated exceptions are "the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, * * * or for loss resulting from any act or omission of the shipper or owner of the goods." Appellee has introduced no such proof in

---

[1] The customs officer stated that " * * * report of the inspector shows the quantity contained in seven barrels at the time they were transferred from the custody of the * * * steamship company to the custody of the domestic customs bonded carrier * * * "

The ship's agent testified as follows:
"Q. And who were the consignees in connection with the seventy barrels that we are discussing this morning, if you know? A. Park Benziger & Company.

"Q. Did you actually make delivery to them? A. To their agents.

"Q. Do you know who the agents were? A. In this case, the receiving agents, the Pennsylvania Railroad.

"Q. And did someone in your organization see to it that the delivery was made to the railroad? A. Yes, sir.

"Q. Do you know who that was? A. From this tally card it would be D. P. Krogman.

"Q. Would that be part of Mr. Krogman's duties at that time, so far as you know? A. Yes, sir."

the case at bar. May appellee shift the burden through the technique of a stamped notation on the bill of lading, when the shipper has no control and only speculative opportunity for discovering the cause of loss? It should be noted that "leakage," just as "decay" in the Schnell case, is an effect, and not a cause. What caused the leakage in the case at bar? If the cause was "the inherent defect * * * of the thing carried," for example, does not Section 3 of the Harter Act require appellee to establish that fact?

I cannot escape the conclusion that appellee has neither an inherent nor a statutory right, through the device of a statement like that on the bill of lading here in evidence, to assign to a shipper the responsibility for proving negligence. While appellee has proved due care prior to the unloading and that no loss occurred in the ship, appellee has come forward with no information concerning the vital period of time between the unloading and the delivery to the rail carrier, during which interval the loss evidently occurred. Since appellee has not shown the cause of the leakage during that interval to be other than its own negligence, I believe the decree dismissing the libel should be reversed.