## THE VALLESCURA.

District Court, S. D. New York.
April 24, 1929.

Joffe & Joffe, of New York City, Proctors for Libellants, (Joseph Joffe, of New York City, of Counsel).

Loomis & Ruebush, of New York City, Proctors for Claimant and Respondent, (Homer L. Loomis, of New York City, of Counsel).

THACHER, District Judge (after stating the facts as above).

Noncompliance with the notice of claim clause is relied on in defense. The cargo of onions was completely discharged not later than Tuesday, December 8, 1925. Written notice of claim was given December 12, 1925, obviously too late, but notice of claim was given by telephone to the ship's agents on the day when the discharge began, and by one

of the libelants in person a day or two later, which was within forty-eight hours after the landing of the shipment. This was sufficient compliance.

The words, "shipped in apparent good order and condition," "to be delivered in like apparent good order and condition," import an admission that the cases when shipped were, so far as could be seen, in good order, and the onions so far as visible were not damaged. More than this the owners did not represent. The Bencleuch, 10 F.(2d) 49, 52 (C. C. A. 2). The onus upon the shipowner is met by proof either that the damage did not arise during shipment, or that it was within the exceptions of the bill of lading. Apparently good when shipped, the onions were in an advanced stage of decay when delivered, and it is for this that recovery is sought. Thus the very nature of the injury shows the damage to be prima facie within the exception, and the burden rests upon the shipper to prove the carrier's negligence in order to escape the exception. The Folmina, 212 U. S. 354, 362, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748; Florinda, 31 F.(2d) 262, 1929 A. M. C. 417 (C. C. A. 2); The Toyohashi Maru, 13 F.(2d) 871 (D. C. N. Y.); The Bencleuch, supra.

As to the stowage, no fault is to be found. Considering the manner in which the crates were stowed, sufficient passages were left for the circulation of air through and around the pack. The uniformity of damage throughout the stow indicates that the fault was not in stowage, but in failing to ventilate the holds sufficiently during the course of the voyage. As to this, the master testified that the ventilators and hatches were at all times closed when the weather was bad, but when the weather permitted were left open, and were always open during fair weather. But, on cross-examination, he testified:

"Q. State whether you placed covers over your ventilators (a) At any time, (b) Give day and time of day for each placing and removal. A. In good weather I opened the ventilators in the daytime and closed them at night, and in bad weather the ventilators were kept closed at all times."

There is an entry on the log, under date of November 17th, as follows:

"Fresh breeze from W. In order to keep the holds, where the onions are, well ventilated we keep the hatches open daily, closing them at night."

Thus it appears that this notoriously perishable cargo of Spanish onions [The Buck-leigh (C. C. A.) 31 F.(2d) 241, 1929 A. M. C. 449, 450] was deprived of all ventilation during the nighttime, regardless of the state of the weather. Such treatment was obviously ruinous, and must have caused substantial damage.

I am asked to disregard the master's testimony with reference to closing the ventilators at night as a mistranslation of his answer. Obviously there is no reason or justification for so doing, particularly in view of the entry upon the log with reference to the hatches. Nor can I reject his statement as improbable. If it had been shown that he had had much experience in carrying such cargoes, his admission of fault would perhaps seem improbable, but it does not appear that he had had any prior experience—certainly none in the trade in which he was engaged—in carrying onion cargoes. Accepting his testimony, as I must, negligence in the care and custody of the cargo is established. It may be that considerable damage resulted to this cargo from lack of ventilation during periods of the voyage when weather conditions required the closing of hatches and ventilators. If this be true, difficulties of proof may arise. But this should not defeat the recovery of such damage as was caused by closing the hatches and ventilators at night during good weather.

Enter decree accordingly, with provision for reference to determine the amount of damage recoverable.