**THE MATILDE PEIRCE.**

Circuit Court of Appeals, Second Circuit.
May 6, 1929.

No. 272.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and Ezra G. Benedict Fox, both of New York City, of counsel), for appellant.

Loomis & Ruebush, of New York City (Homer L. Loomis and Glenn W. Ruebush, both of New York City, of counsel), for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge. The cargo involved consisted of a shipment of 1,000 barrels of cherries in brine at Barletta, Italy, and a further shipment of 1,302 barrels of similar merchandise at Monopoli. This merchandise was to be carried on the Matilde Peirce to New York, consigned to the American Trading Company, and the bills of lading contained no admission as to the condition of the goods.

Rodman, a surveyor of the cargo for the libelant, testified that when it arrived at New York many of the barrels were dry, and some of them were so crushed that they would not hold the brine; that subsequently the intact barrels were loaded on freight cars and forwarded to the purchasers, but some of the other barrels had their heads out, and there was extensive damage to 173 barrels in all. Many of the cherries were shrunken, shriveled and soft on arrival, owing to lack of brine. Both Rodman and Vaughan, the other New York surveyor for the libelant, said that most of the barrels were stowed bilge to bilge, that they were so imperfectly dunnaged and chocked that there was nothing to support the full weight of the upper on the lower tiers of barrels, and many of the barrels were consequently crushed and had

lost their brine. Rodman added that these barrels had evidently contained brine when shipped, or the cherries would have arrived in a much worse—indeed, in a putrid—condition. He admitted that there was frequently leakage of brine and damage in shipments of barreled cherries, but said the loss in this case was unusually great.

The claimants had a surveyor named Wylie, who examined the cargo in New York (record, folio 119), but they did not see fit to call him. The testimony of Rodman and Vaughan as to the condition of the goods on arrival was, therefore, uncontradicted by any witness who saw them on arrival, and was to the effect that there was imperfect stowage and serious damage.

The claimants took the deposition of Brunetti, the stevedore who supervised the stowage at Monopoli. His testimony as to method of stowage was somewhat confused and contradictory, but he testified with no variation that the barrels were sound and in perfect condition at the time of shipment and that he saw none leaking.

Caressi, another Italian stevedore, whose deposition was taken by claimants, inspected the barrels when the vessel arrived at Bari, a port of call. He said that he saw a small seepage from one barrel, which was recoopered, but none of the barrels, except this one, showed signs of leaking, and none of them showed signs of having been used before.

The master of the vessel, whose testimony was taken by deposition, said that there was careful stowage, with plenty of dunnage and chocks, and that the barrels were stowed bilge and cantline, and not bilge and bilge. He also said there was rough weather on only one or two days of the voyage, and that no damage was done to the ship. He testified that the barrels at the time of loading were in normal condition, and offered no explanation of the damaged condition of a large number of the barrels and their loss of brine.

The trial judge held that the libelant had failed to prove that the damaged cherries had sufficient brine when shipped to preserve them from decay. He found that the stowage was proper, and accordingly dismissed the libel, because the bills of lading exempted the carrier from liability due to breakage and leakage, and held that the libelant was bound to show affirmatively that the damage was due to the carrier's negligence, and had not sustained that burden.

In spite of our disinclination to revise a determination of a trial court on a question of fact, and our respect for the opinion of the experienced judge who conducted the trial, we differ with his conclusion in this case, and regard it as overcome by too strong inferences of fact to stand.

The claimants failed to call their own surveyor to show the condition of stowage on arrival, and have made no attempt at direct contradiction of the testimony of Rodman and Vaughan that, on arrival, the stowage appeared to be inadequate. Brunetti's testimony as to stowage was contradictory. At first he said that nothing was done to prevent upper tiers of barrels from resting on lower tiers, but later testified that the upper barrels were so supported as not to exert any pressure. The claimants rely on the failure of libelant to prove that the barrels contained a sufficient supply of brine when shipped. But Rodman said that the condition of the cherries would have been far worse than it was, had they started without brine. There was not the slightest attempt on the part of the claimants to prove that the barrels were not good when shipped. Libelant's own stevedores testified that they were sound, and were not leaking at Monopoli and Bari, but that they arrived crushed, with the contents damaged, after an uneventful voyage. In view of all this, we deem it unreasonable to suppose that bad stowage was not the cause of the libelant's loss. Breakage and leakage were the natural result of the bad stowage Rodman and Vaughan saw on arrival. Bad stowage was negligence for which the libelant may recover, notwithstanding exceptions against leakage or breakage. The Arpillao (C. C. A.) 270 F. 426.

The decree is reversed, and the cause remanded, with directions to enter an interlocutory decree for libelant, with the usual reference for damages.