## THE TERGESTEA.

District Court, S. D. New York.
Nov. 2, 1931.

Purrington & McConnell, of New York City (Frank J. McConnell, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (L. deGrove Potter and John J. Heckman, both of New York City, of counsel), for claimant.

PATTERSON, District Judge.

The libelant was the owner of 1,800 bags of Egyptian onions which were carried on the steamship Tergestea from Trieste to New York. The onions were in good condition on shipment at Trieste on May 8, 1928, but were badly decayed on unloading here on June 6, 1928. The libelant brought this libel in rem to recover damages.

■ The bills of lading provided that the carrier should not be liable for loss caused by decay or sweat or anything arising from the nature of the goods. Since the injury to the onions is prima facie within the exception, there is no liability unless the libelant can establish that the carrier was negligent. The Florinda (C. C. A.) 31 F.(2d) 262; The Hog Island (C. C. A.) 48 F.(2d) 101.

Some of the facts are substantially undisputed. The Tergestea is a modern ship, built in 1926. The master had had long experience in carrying onions. The onions were stowed in the forward part of No. 2 shelter deck. There is no bulkhead between No. 2 and No.

3 shelter deck, so that the two spaces form one large compartment. This hold was served by four ventilators of approved type, two of them located in the forward part where the onions were stowed. These ventilators were kept open at all times. The hold was also ventilated by the hatches, which were kept open during the daytime, except for two or three days of rough weather. At night the hatches were closed.

As to the internal condition of No. 3 shelter deck on this voyage, there are several versions. Weighing the proof as carefully as I can, I have come to the conclusion that the testimony of Cameron and Lynner, witnesses for the carrier, gives a picture of the stowage that is substantially accurate. According to them, two tiers of bags of magnesite were on the bottom of the compartment. Then came some dunnage upon which the bags of onions rested. The onions filled the space forward of the hatchway and were also stacked in the wings, being laid in tiers of five or six bags high and leaving a clearance of one or two feet at the top. The onions did not touch the skin of the ship at the sides, but were in contact with wooden battens placed along the sides. The after part of the compartment held boxes of lemons, but the hatchway was clear of cargo.

There is no doubt that considerable sweating occurred in this hold. On discharge of the onions, a large part of them proved to be decayed and sprouting. The entire shipment was abandoned by the libelant as not worth the duty. Some of the carrier's witnesses sought to minimize the extent of the damage, but I am convinced that the value of the onions was greatly impaired.

I am of opinion that no case of negligence on the part of the carrier has been made out. So far as the place of stowage is concerned, the shelter deck was as good a place as the ship afforded for cargo of this character. Nor can any fair criticism be made of the equipment in the way of ventilators, dunnage, battens, and the like. So much the libelant's surveyor conceded. But it is said that the carrier was at fault in piling the onions in so solid a mass, without aisles or rice ventilators, and in not keeping the hatches open at night. The weight of expert opinion leads me to believe that the arrangement of the bags and the absence of rice ventilators were not unusual. The case comes down then to whether the closing of the hatches at night makes out a case of negligence. Of course the closing of the hatches diminishes the circulation of air in the hold. A reason for closing them at night lies in the fact that few men are on duty at that time, and there would be trouble in closing the hatches in an emergency. I think that the question of opening and closing hatches is a matter resting in the master's discretion. The La Drome (D. C.) 43 F.(2d) 241. It is said that Judge Thacher in The Vallescura (D. C.) 43 F.(2d) 247, held that it was negligent to shut the hatches at night on a cargo of onions. A careful reading of the opinion will show, however, that what Judge Thacher criticized was the closing at night of all ventilators and hatches, thus depriving the onions of all ventilation at night, regardless of the state of the weather. He did not hold that the mere closing of hatches, the ventilators being left open, constituted negligent care of the onions.

The libel will therefore be dismissed, with costs.