PROCTOR & GAMBLE MANUFACTURING COMPANY, Plaintiff, *v.* OCEAN STEAMSHIP CO., LTD., Defendant.

City Court of New York, New York County, August 4, 1933

*Single & Single,* for the plaintiff.

*Haight, Smith, Griffin & Deming,* for the defendant.

NOONAN, J. The case was tried before the court without a jury, and at the conclusion of the trial, decision was reserved.

The action was brought to recover the sum of $2,450 for a shortage of crude cocoanut oil shipped on May 16, 1927, from Cebu, Philippine Islands, to New York city. Plaintiff claims that 1,686,586 pounds (752.9 tons) were loaded on the defendant's vessel *Eumaeus,* and that there were delivered at the port of destination on July 13, 1927, 1,662,030 pounds, a shortage of 24,556 pounds (about twelve tons of oil). The contention of the plaintiff is that the loss was due to a leakage of the oil from the deep tank on the vessel in which it was carried. The shipment was made by the Philippine Refining Corporation (a Philippine corporation) to " order, notify Philippine Refining Corporation of New York." On March 1, 1927, about two months and a half before the shipment, the Philippine Refining Corporation of New York had entered into a contract with the plaintiff herein for the sale of about 750 tons of crude cocoanut oil. The plaintiff claims that the Philippine Refining Corporation of Manila sold the shipment on the *Eumaeus* to the Philippine Refining Corporation of New York and that the latter applied the shipment to the contract of March 1, 1927. The

bill of lading under which the shipment was made contained a rider, the provisions of which pertinent to the controversy read as follows:

" (2) It is agreed that a competent Licensed Surveyor shall be appointed by and employed by shippers to supervise, inspect and pass on the work of conditioning the tanks to receive cocoanut oil, and shall finally survey the tanks, and issue a certificate to the tanks being sound, unpainted, in satisfactory condition for the safe carriage of cocoanut oil in bulk and fit to receive and transport bulk cocoanut oil and that the loading and stowage of said oil is proper, or otherwise. The surveyor shall prepare, sign and cause to be delivered to the ship's agents, prior to ship's departure, two copies of the Certificate issued.

" (3) If the tank upon testing by surveyor employed by shippers prove to be defective, Carriers undertake to execute necessary repairs provided repairs can be effective within five days and at reasonable expense, otherwise carriers have the option of cancelling this contract, in which case no responsibility shall rest with vessel, owners, or agents."

" It is expressly agreed that if the Carriers shall have exercised due diligence to make the vessel seaworthy and properly manned, equipped and supplied, they shall not become, or be held liable for any loss of, or damage to oil carried in bulk, which shall be the result of contamination, discoloration, leakage, seepage, rust, or for any effect of steam coils and/or their connections upon the oil or for the result of any nature, kind or character, unless it be first proved that such loss or damage was caused by, or resulted from Carrier's neglect, or fault, or failure in proper custody or care of said oil. It is further expressly agreed that the certificate of the surveyor employed by shipper at the port of loading shall be deemed conclusive evidence that the vessel is in all respects seaworthy for the carriage of this oil in bulk and the cargo has been properly loaded and stowed, and that up to the time of issuance all due diligence has been used to ensure proper delivery at the port of discharge."

At the outset of the trial the defendant disputed the title of the plaintiff, and, as a consequence, the plaintiff's right to bring the action. Some testimony was taken on this point and briefs were submitted since, if the plaintiff could not prove title, the action was at an end. The sale to the plaintiff was made under an alleged C. I. F. contract. After consideration of the point, the conclusion was reached that the plaintiff had shown sufficient evidence, although the question was not altogether free from doubt, that it

was entitled to bring the action. The only other person who could claim title was the Philippine Refining Corporation of New York and this corporation made no claim to the shipment as to the alleged loss of oil. The trial was then resumed on the main contention that the defendant was negligent in the carriage of the oil. At the close of the entire case the defendant again raised the point that the plaintiff had not shown title or the right to bring the action.

I am willing, however, to rule in favor of the plaintiff on this contention despite some deficiencies in the proof, principally for the reason that no other party concerned in this shipment has come forward with a contrary claim after the lapse of the years since the shipment started on its journey.

The remaining question is whether the loss of the oil has been caused by any negligent act of the defendant. In passing on this question, the evidence shall be considered in its entirety and it will be assumed that the defendant had the burden of proving that its vessel was seaworthy. The rider of the bill of lading provided for the appointment by the shipper of a competent licensed surveyor to inspect the deep tank in which the oil was carried, and, in the event that the tank was found to be in good condition, to issue a certificate to that effect to the ship's agents prior to the ship's departure from the port of loading. This was done in this case. The inspection was made by the shipper's surveyors, and, according to the certificate issued, the tank was found to be in good condition and fit to carry the oil. The rider of the bill of lading also provided that such a certificate shall be deemed conclusive evidence of the seaworthy condition of the vessel for the carriage of the oil in bulk and that it was properly loaded and stowed. In the event that the vessel was made seaworthy, the carrier was not to be liable for leakage of the oil unless it first be proved that such loss or damage was caused by the carrier's negligence. It is not necessary to decide whether these provisions of the bill of lading contravene the Harter Act (Act of Feb. 13, 1893, chap. 105; 27 U. S. Stat. at Large, 445 [U. S. Code, tit. 46, §§ 190–195]). (See the following cases on this question: *The Skipsea*, [C. C. A.] 9 F. [2d] 887; *The Arakan*, [D. C.] 11 id. 791; *Philippine Refining Corp.* v. *United States*, [D. C.] 29 id. 134; affd., [C. C. A.] 41 id. 1010.)

In this case it is a question of whether the evidence considered as a whole has shown that the carrier has fulfilled its duty to make the ship seaworthy. The question of the performance of the carrier's duty in that respect will be considered as one of fact. (*Philippine Refining Corp.* v. *United States, supra; The Arakan, supra.*) On this issue the proof that the surveyors appointed by the shipper prior to the ship's departure from Cebu had examined

the deep tank and found it to be free from defect is convincing evidence taken with the other proof in the case that the owner of the vessel had performed its full duty. If the shipper acting through its agent is satisfied with the vessel, what better proof may be asked for that it is in good condition and suitable for the transportation of the cargo. Evidence of this character has been regarded of high value as it comes from the mouth and hand of the shipper's own representative. (Cf. *The Koranna*, [D. C.] 214 F. 172; *Jones S. S. Co.* v. *Barnes-Ames Co.*, [C. C. A.] 244 id. 116; certiorari denied, 245 U. S. 658; 38 S. Ct. 14; 62 L. Ed. 534.) The officers of the vessel testified that nothing untoward happened during the voyage to cause the loss of any oil. While for a few days the weather was rough and the sea was high, no leakage had taken place. There is, therefore, clear proof that the vessel left the port of Cebu in a seaworthy condition and that, while she was in transit, due care was taken by the officers and crew to bring her safely to port and that there was no evidence of any defect in the deep tank which became apparent during the voyage. If twelve tons of oil were lost, the natural query is, how was it lost? It seems to me that the inference to be drawn, if any, is that it was lost at the time of the discharge of the cargo from the ship's side on her arrival at New York which took place under the supervision of the plaintiff's agent. McLeod, who acted for the plaintiff and who superintended the discharge, according to his own testimony, was not continually in attendance on the vessel throughout the time of discharge. The pumping from the ship to the tank cars owned by the plaintiff was entirely within the control of the plaintiff's employees and it is important to note that outside of McLeod none of the men engaged in the work were produced as witnesses by the plaintiff during the trial. The proof further shows that the defendant made the claim as early as May, 1929, which was repeated in March, 1930, at the time when the testimony of the ship's officers was taken, that there was a leaking pipe connection during the process of discharging the oil from the ship to the tank cars. The tank cars were transported to Port Ivory, Staten Island, where the oil was weighed. The testimony as to these weights is far from satisfactory. McLeod refused to swear as to the accuracy of the figures taken by him. The original records of the weighmaster were not produced nor were those taken by the clerk who copied a part of same in a book. In addition, there is some evidence that the track scales by which the oil was weighed were found to be defective. Weighed against this evidence, is the fact that there was some leakage from a faulty

rivet. The chief officer of the vessel estimated the loss of oil from this source as about one quart. The captain of the vessel gave similar evidence. McLeod, plaintiff's surveyor, testified that on examination of this part of the vessel he found only slight evidence of leakage. There was no proof as to the weight and value of the oil lost in this manner. At most it was a negligible quantity. Besides, the defendant should not be held accountable for it, unless negligence can be shown. The weight of evidence is clearly with the defendant that the vessel was seaworthy and there is nothing to contradict the testimony of the ship's officers that due care of the oil was taken during the voyage. If this be so, the small leakage from the deep tank comes within the exception of the bill of lading and unless negligence is shown on the part of the defendant, it cannot be held responsible. (*Austin Nichols & Co., Inc.,* v. *Compania Transatlantica,* 218 App. Div. 660; affd., 245 N. Y. 624.)

In my opinion, judgment should be given to the defendant dismissing the plaintiff's cause of action on the merits.